IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRENDA TAYLOR,
on behalf of Plaintiff and
the class members described below,

Plaintiff,

vs.

SUNUP FINANCIAL, LLC d/b/a
BALANCE CREDIT,

Defendant.

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff Brenda Taylor brings this action against SunUp Financial, LLC d/b/a Balance Credit, to obtain redress from usurious loans. Plaintiff seeks damages under the Indiana Consumer Credit Code (Count I).

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under 28 U.S.C. §1332(d). On information and belief, there are more than 100 class members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

3. This Court has personal jurisdiction over Defendant because it is located in Illinois.

4. Article III of the Constitution of the United States is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

5. Plaintiff is a citizen of Indiana and a resident of Westfield, Indiana.

6. Defendant SunUp Financial, LLC d/b/a Balance Credit is a Delaware limited liability company with its principal place of business at 306 West Erie Street, Suite 300, Chicago, IL 60654. Its registered agent and office is C T Corporation System, 208 S. La Salle St., Suite 814, Chicago, IL 60604-1101.

7. Defendant SunUp Financial, LLC d/b/a Balance Credit has two managers, (Mr.) Kim Anderson and Braviant Consumer, LLC.

8. On information and belief, Anderson is a resident and citizen of Florida.

9. Braviant Consumer, LLC is a Delaware limited liability company with its principal office at 306 W. Erie Street, Suite 300, Chicago, IL 60654.

10. The sole manager of Braviant Consumer, LLC is Braviant Holdings, LLC, a Delaware limited liability company with its principal office at 306 W. Erie Street, Suite 300, Chicago, IL 60654.

11. The sole manager of Braviant Holdings, LLC is Kim Anderson.

## FACTS

12. On or about November 14, 2023, Plaintiff obtained a $1,800 loan from Defendant SunUp Financial, LLC d/b/a Balance Credit, via the Internet. A copy of the loan agreement is attached as Exhibit A.

13. Plaintiff obtained the loan for personal, family or household purposes and not for business purposes.

14. The loan had an interest rate of 224%.

15. This rate is typical of the rates charged by SunUp Financial, LLC d/b/a Balance Credit to residents of Indiana.

16. All rates charged by SunUp Financial, LLC d/b/a Balance Credit to residents of Indiana exceed 36% per annum.

17. The loan was nominally made by Capital Community Bank, Provo, Utah.

18. Plaintiff disclosed her Indiana address on the loan application.

19. Plaintiff has paid usurious interest.

20. SunUp Financial, LLC makes loans in some states itself and has an arrangement with Capital Community Bank to nominally make loans in other states. On its website, www.balancecredit.com, SunUp Financial, LLC states:

> In AK, AR, AZ, FL, IN, KS, KY, LA, MI, MN, MT, OH, OK, and TN loans are provided by Capital Community Bank (or by one of its affiliates or divisions), a Utah Chartered bank, located in Provo, Utah, Member FDIC. All loans funded by Capital Community Bank (or by one of its affiliates or divisions) will be serviced by Balance Credit. Your loan agreement identifies your lender. . . .
>
> AL Residents: Loans may be provided by either 1) SunUp Financial, LLC (License No. MC22640), or 2) Capital Community Bank (or by one of its affiliates or divisions), a Utah Chartered bank, located in Provo, Utah, Member FDIC. Your loan agreement identifies your lender.
>
> DE residents: SunUp Financial, LLC is licensed by the Delaware State Bank Commissioner, License No.024137, expiring December 31, 2024.
>
> TX Residents: Balance Credit is not the lender. Loans are provided by unaffiliated third-party lenders. For some loans, Balance Credit acts as both a Credit Services Organization and Credit Access Business when loans are provided by an unaffiliated third-party lender. Balance Credit is licensed by the Texas Office of the Consumer Credit Commissioner, License No. 1700059320-158634. Other loans are provided by Capital Community Bank (or by one of its affiliates or divisions), a Utah Chartered bank, located in Provo, Utah, Member FDIC. Your loan agreement identifies your lender.

21. Although nominally made by Capital Community Bank, it is not possible to apply for or obtain loans such as that made to Plaintiff directly from Capital Community Bank. The high-interest loans are not mentioned on Capital Community Bank's website.

22. Balance Credit loans can only be applied for via the Balance Credit website, www.balancecredit.com (Exhibit B).

23. Capital Community Bank had virtually no involvement in the underwriting or approval of Plaintiff's Balance Credit loan.

24. Capital Community Bank had no involvement in the billing, collection, or servicing of Plaintiff's loan.

25. The money used to fund the extension of credit SunUp Financial, LLC d/b/a Balance Credit made to Plaintiff belonged to, overwhelmingly, SunUp Financial, LLC and its affiliates and investors, not to Capital Community Bank.

26. SunUp Financial, LLC d/b/a Balance Credit was the entity that provided notices to Plaintiff that were required by law.

27. SunUp Financial, LLC d/b/a Balance Credit billed Plaintiff.

28. SunUp Financial, LLC d/b/a Balance Credit holds all documents pertaining to the Balance Credit loan.

29. SunUp Financial, LLC d/b/a Balance Credit, either directly or through its contractors and affiliates, performs all, or virtually all, of the activities related to Balance Credit's lending business, including collection, servicing, payment and remittance operations.

30. Capital Community Bank stands to lose virtually nothing if a loan or extension of credit made through the Balance Credit website goes bad.

31. Likewise, Capital Community Bank stands to profit very little in the event an extension of credit is paid in full.

32. Rather, Capital Community Bank collects a small, but guaranteed, fee for each loan or extension of credit originated as part of the rent-a-bank scheme with SunUp Financial, LLC d/b/a Balance Credit. Capital Community Bank is also paid a small amount of the profits from Balance Credit loans.

33. SunUp Financial, LLC d/b/a Balance Credit maintains accounts with Capital Community Bank to provide extra protection for Capital Community Bank, at the expense of SunUp Financial, LLC d/b/a Balance Credit, to ensure Capital Community Bank loses no money even if a loan the bank "made" does not perform.

34. The loan agreement (Exhibit A) is written on a standard form.

35. The loan was made entirely via the Internet.

36. The principal amount was transferred to Plaintiff's bank account in Indiana via

ACH.

37. The loans were to be repaid via ACH.

38. A significant majority of the transaction occured within the State of Indiana – applying for the loans and receiving and collecting the funds.

**SUNUP FINANCIAL, LLC D/B/A BALANCE CREDIT**
**ENGAGES IN RENT-A-BANK SCHEME WITH CAPITAL COMMUNITY BANK**

39. Because almost every state, including Indiana, renders SunUp Financial, LLC d/b/a Balance Credit's interest rates usurious, it "partners" with Capital Community Bank.

40. Purportedly, Capital Community Bank originates the loans and then assigns accounts to SunUp Financial, LLC d/b/a Balance Credit, which "services" the accounts.

41. The arrangement is colloquially known as a "rent-a-bank" scheme.

42. However, at no point is Capital Community Bank the true lender of the SunUp Financial, LLC d/b/a Balance Credit accounts, nor is any capital belonging to Capital Community Bank at risk.

43. Such "rent-a-bank" schemes simply allow predatory lenders like SunUp Financial, LLC d/b/a Balance Credit to make loans to consumers in states which prohibit usury, including Indiana, with a modicum of legal cover. Capital Community Bank can assert pre-emption under federal law to Indiana anti-usury statutes, and they can export the maximum interest rate of their home states to lend to borrowers in other states with stricter usury laws.

44. However, Capital Community Bank is not the true lender of loans made through www.balancecredit.com.

45. Capital Community Bank and TAB Bank had virtually nothing to do with the marketing, underwriting, servicing, and/or collection of the accounts, and have engaged in a "rent-a-bank" scheme with Defendant.

46. In "rent-a-bank" schemes, predatory lenders like SunUp Financial, LLC d/b/a Balance Credit launder their loans under the guise that the loan is made by a bank.

47. While such "rent-a-bank" schemes have several different variants, they all have

several common features:

a. The design of the loan product, including the name of the product (Balance Credit) is proposed by a nonbank to the bank;

b. The bank outsources all or nearly all activities relating to the loan, including marketing, underwriting, funding, and servicing;

c. These services are outsourced to a nonbank entity (e.g., SunUp Financial, LLC and its related subsidiaries); and,

d. There is a transfer of all or almost all of the credit risk on the loans either to the nonbank and related subsidiaries directly, or to third-party "investors" through transactions arranged by the nonbank.

48. Essentially, the nonbank and its affiliates initiate the relationship, propose all aspects of the loan process be outsourced to it, provide all or nearly all of the factors necessary to make the loans, and then acquire most of the economic interest in the loans to facilitate the off-loading of those interests to a third party, creating a modest, but guaranteed, profit for the bank on each loan.

49. The bank simply receives a guaranteed fee, per loan, for renting its name and status as an FDIC-insured bank to SunUp Financial, LLC d/b/a Balance Credit.

50. SunUp Financial, LLC d/b/a Balance Credit indemnifies the bank partners against any losses and, in a complex series of transactions utilizing several different limited liability companies, money "loaned" by the bank is immediately repaid to it by SunUp Financial, LLC d/b/a Balance Credit, who then acquires "servicing" rights and becomes an assignee of the loan.

51. The capital to fund the loans is provided by SunUp Financial, LLC d/b/a Balance Credit, or one of its subsidiaries.

52. SunUp Financial, LLC d/b/a Balance Credit also assumes the risk of bad debt concerning its loans, meaning that SunUp Financial, LLC d/b/a Balance Credit's capital, and not the bank's, is at risk.

53. Additionally, the Bank's economic interests are protected due to agreements that SunUp Financial, LLC d/b/a Balance Credit maintains cash collateral in an account at the bank.

54. SunUp Financial, LLC d/b/a Balance Credit also acts as the servicer for loans and extensions of credit made through www.balancecredit.com.

55. SunUp Financial, LLC d/b/a Balance Credit reconciles the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

56. As per the SunUp Financial, LLC d/b/a Balance Credit business model, once the partner bank "made" an extension of credit to a consumer, the Account (or the rights to the receivables contained within the Account) was immediately assigned to SunUp Financial, LLC d/b/a Balance Credit.

57. In sum, SunUp Financial, LLC d/b/a Balance Credit, and not the bank partner, is the true lender of Plaintiff's loan, because it has the predominant economic interest in loans made to consumers like her. *Ubaldi v. SLM Corp.*, 852 F.Supp.2d 1190 (N.D.Cal. 2012); *Eul v. Transworld Sys.*, 15cv7755, 2017 U.S. Dist. LEXIS 47505, at *22-23, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017); *Eastern v. American West Financial,* 381 F.3d 948, 957 (9th Cir. 2004); *CashCall, Inc. v. Morrisey*, 2014 W. Va. LEXIS 587, 2014 WL 2404300, at *14 (W.Va. May 30, 2014); *People ex rel. Spitzer v. Cty. Bank of Rehoboth Beach, Del.*, 45 A.D.3d 1136, 846 N.Y.S.2d 436, 439 (N.Y. App. Div. 2007); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 15cv7522, 2016 U.S. Dist. LEXIS 130584, at *16, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *BankWest Inc. v. Oxendine*, 266 Ga.App. 771, 598 S.E.2d 343 (2004); *BankWest, Inc. v. Baker*, 324 F.Supp.2d 1333 (N.D.Ga. 2004); *Commonwealth of Pennsylvania v. Think Fin., Inc.,* 14cv7139, 2016 U.S. Dist. LEXIS 4649, at *40, 2016 WL 161597 (E.D. Pa. Jan. 14, 2016); *Solomon v. American Web Loan*, 4:17cv145, 2019 U.S. Dist. LEXIS 48420, 2019 WL 1320790 (E.D. Va. Mar. 20, 2019); *Meade v. Marlette Funding, LLC,* 17cv30376 and 30377, 2018 Colo. Dist. LEXIS 3856 (Dist. Ct., Aug. 13, 2018), later opinion, 2018 Colo. Dist. LEXIS 4042 (Dist. Ct., Aug. 14, 2018); *State v. CashCall, Inc.*, 27cv13-12740, 2013 Minn. Dist. LEXIS 31 (Hennepin Co., Sept. 6, 2013); *State ex rel. Cooper v. Western Sky Fin., LLC,* 13cvs16487, 2015 NCBC 84, 2015 NCBC LEXIS

87 (N.C.Super. Ct., Wake Co., Aug. 27, 2015); *Terry v. Community Bank of Northern Virginia,* 255 F.Supp.2d 817, 822 (W.D.Tenn. 2003).

58. After an account is assigned to SunUp Financial, LLC d/b/a Balance Credit, it then proceeds to collect usurious interest and fees from consumers.

59. SunUp Financial, LLC d/b/a Balance Credit thus obtains the predominant economic interest in the loan, i.e., 95% to 100%.

60. SunUp Financial, LLC d/b/a Balance Credit markets, brokers, arranges, and facilitates the loan and has the right to obtain the 95% to 100% interest in the loans.

61. SunUp Financial, LLC d/b/a Balance Credit predominantly designs, controls, or operates the loan program.

62. SunUp Financial, LLC d/b/a Balance Credit engages in "direct origination" of some loans and uses Capital Community Bank where to avoid state laws prohibiting Balance Credit from making loans at the rates it elects to make loans at.

63. In an attempt to evade the Indiana Consumer Credit Code, SunUp Financial, LLC d/b/a Balance Credit Loan Services, LLC's agreements provide for arbitration and require the arbitrator to apply Utah law.

64. Such provision is an impermissible prospective waiver of statutory rights under the Indiana Uniform Consumer Credit Code, and is invalid.

## INDIANA REGULATION OF LENDING

65. The Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-201, establishes a maximum loan finance charge of 36% per annum for consumer loans other than supervised loans.

66. For loans other than supervised loans, Ind. Code § 24-4.5-3-201 provides:

> (1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

67. With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind.

Code § 24-4.5-3-508, provides:

> Loan finance charge for supervised loans.
>
> (1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
>
> (2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:
>
> (a) the total of:
>
> (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;
>
> (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and
>
> (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or
>
> (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

68. There is also a provision for small loans, Ind. Code § 24-4.5-7-101 *et seq.*, but it requires that small loans conform to other requirements that Defendants' loans do not comply with.

69. Ind. Code. § 24-4.5-7-201, "Limitations on finance charges," provides:

> (1) Finance charges on the first two hundred fifty dollars ($250) of a small loan are limited to fifteen percent (15%) of the principal.
>
> (2) Finance charges on the amount of a small loan greater than two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400) are limited to thirteen percent (13%) of the amount over two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400).
>
> (3) Finance charges on the amount of the small loan greater than four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550) are limited to ten percent (10%) of the amount over four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550).
>
> (4) The amount of five hundred fifty dollars ($550) in subsection (3) is subject to change under the provisions on adjustment of dollar amounts (IC 24-4.5-1-106). However, notwithstanding IC 24-4.5-1-106(1), the Reference Base Index to be used under this subsection is the Index for October 2006.

70. The amount of finance charge provided for in Exhibit A exceeds that permitted in Indiana under any provision.

71. Ind. Code Ann. § 24-4.5-1-201, "Territorial application," provides:

> (1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .
>
> > (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.
> >
> > (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.
> >
> > (e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.
> >
> > (f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.
>
> For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .
>
> (5) Notwithstanding other provisions of this section:
>
> > (a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and
> >
> > (b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.
>
> (6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or

modifications thereof, to which this article applies:

(a) An agreement that the law of another state shall apply.

(b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

(c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

72. Ind. Code 24-4.5-1-107 prohibits waiver by the consumer of rights under the Uniform Consumer Credit Code:

Waiver — Agreement to forego rights — Settlement of claims.

(1) Except as otherwise provided in this Article, a buyer, lessee, or debtor may not waive or agree to forego rights or benefits under this Article.

(2) A claim by a buyer, lessee, or debtor against a creditor for an excess charge, other violation of this Article, or civil penalty, or a claim against a buyer, lessee, or debtor for default or breach of a duty imposed by this Article, if disputed in good faith, may be settled by agreement.

(3) A claim, whether or not disputed against a buyer, lessee or debtor may be settled for less value than the amount claimed.

(4) A settlement in which the buyer, lessee, or debtor waives or agrees to forego rights or benefits under this Article is invalid if the court as a matter of law finds the settlement to have been unconscionable at the time it was made. The competence of the buyer, lessee, or debtor, any deception or coercion practiced upon him, the nature and extent of the legal advice received by him, and the value of the consideration are relevant to the issue of unconscionability.

73. Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

. . . (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and ***if the debtor has paid an excess charge the debtor has a right to a refund***. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) ***If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that***

> ***person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.*** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .
>
> (7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.
>
> (8) In any case in which it is found that a creditor has violated this Article, the court may award ***reasonable attorney's fees*** incurred by the debtor. . . . (Emphasis added)

74. The excessive interest charges imposed by Defendant were willful.

75. Loans to Indiana residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Indiana.

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

76. Plaintiff incorporates paragraphs 1-75.

77. Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff and other borrowers are entitled to ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

78. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

79. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via www.balancecredit.com (c) at more than 36% interest (d) on or after a date two years prior to the filing of this action.

80. Plaintiff may alter the class definition to conform to developments in the case and discovery.

81. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

82. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendant engages in a practice of making and attempting to collect illegal loans.

83. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

84. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

85. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

i. Statutory damages;

ii. Attorney's fees, expenses and costs; and

iii. Such other or further relief as is appropriate.

/s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Keelan D. Kane
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Each Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman