**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRENDA TAYLOR, on behalf of herself and
others similarly situated,

        Plaintiff,

        v.

SUNUP FINANCIAL, LLC d/b/a BALANCE
CREDIT,

        Defendant.

No. 1:24-CV-10310

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Brenda Taylor took out a $1,800 consumer loan from SunUp Financial, LLC (which does business as Balance Credit). R. 1, Compl. ¶ 12.[1] The loan had an annual interest rate of 224%. *Id.* ¶ 14. But an Indiana consumer-protection statute (Taylor lives in Indiana) caps the interest rate for loans like the one Taylor received at a much, much lower 36%. *See* Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-508(2)(a)(i); Compl. ¶ 67. Under Indiana law, debtors are entitled to a refund if they have "paid an excess charge" and can recover statutory damages of up to 10 times the amount of the excess charge for overcharges. Ind. Code § 24-4.5-5-202(3)–(4); Compl. ¶ 73.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Taylor brings this proposed class action, alleging that Balance Credit violated the Indiana Credit Code not just as to her loan, but to a class of Indiana residents.[2] Compl. ¶¶ 76–85. But Balance Credit moves to compel arbitration of Taylor's claim pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4, and to stay the action pending completion of arbitration. R. 19, Def.'s Mot. For the reasons explained in the Opinion, the motion is granted: the claim must be arbitrated.

## I. Background

Taylor is a resident and citizen of Indiana. Compl. ¶ 5. In November 2023, she obtained a loan from Balance Credit through Capital Community Bank for $1,800. *Id.* ¶¶ 12, 17, 32. The loan had an annual interest rate of 224%. *Id.* ¶ 14. Indiana has a consumer protection statute—the Indiana Credit Code—that caps the annual interest rate for loans such as the one Taylor received at 36%. Ind. Code § 24-4.5-3-508; Compl. ¶ 67. Consumer rights granted by the Indiana Credit Code cannot be waived, as dictated by the statute itself. Ind. Code § 24-4.5-1-107(1); Compl. ¶ 72.

Taylor alleges that Balance Credit circumvents Indiana's statutory caps on interest rates by partnering with banks chartered in states that do not have interest caps like that. Compl. ¶ 43. She alleges that the partner bank purportedly originates the loans and assigns the accounts to Balance Credit. *Id.* ¶ 40. In return, the partner

---

[2]This Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The proposed class would cover more than 100 class members, there is minimal diversity of citizenship, and the aggregate amount in controversy exceeds $5 million. Compl. ¶¶ 2, 5–6; *see Calchi v. TopCo Assocs., LLC*, 676 F. Supp. 3d 604, 614 (N.D. Ill. 2023) ("[I]n a CAFA case, an LLC's citizenship is determined by its state of organization and its principal place of business.").

bank receives a guaranteed fee and a small amount of the profits from each loan. *Id.* ¶ 32. Taylor alleges that Balance Credit partnered with Capital Community Bank, which is chartered in Utah, to provide her loan. *Id.* ¶¶ 17, 20. Utah does not have a statute capping interest rates for consumer loans. Taylor alleges that Capital Community Bank is not really the lender: the bank is not involved in the underwriting, approval, billing, collection, or servicing of the loans; in fact, a borrower cannot even apply for a Balance Credit loan through Capital Community Bank. *Id.* ¶¶ 22–24. Balance Credit was the entity that provided Taylor with notices required by law, billed Taylor, performed all activities related to its lending business (including collection, servicing, payment, and remittance operations), and held all documents pertaining to the loan. *Id.* ¶¶ 26–29. This business relationship between Balance Credit and Capital Community Bank forms the basis of Taylor's claim.

The promissory note for Taylor's loan purports to identify CC Connect, a division of Capital Community Bank, as the lender, and Balance Credit as the entity servicing the loan. R. 1-1, Compl. Exh. A, Promissory Note at 1, 6. The promissory note also includes an arbitration provision titled "Waiver of Jury Trial and Class Action and Arbitration Clause." *Id.* at 6. The note contains an acknowledgment that is specific to the arbitration clause: "By electronically checking 'I have read and accept the terms of the Note,' I acknowledge that … I understand and agree to the terms of this Note, including the Waiver of Jury Trial and Class Action and Arbitration Clause …." *Id.* at 11. The arbitration provision purports to "govern[ ] all '[d]isputes'

3

that would usually be decided in court … between [l]ender (or any [r]elated [p]arty) and [the borrower]," and defines "[d]isputes" as "ha[ving] the broadest reasonable meaning[,] … includ[ing] all claims even indirectly related to [the] loan or this [a]greement …." *Id.* at 6. The clause governs CC Connect, as well as CC Connect's "agents (including Balance Credit, which services the loan)." *Id.* at 1, 6.

The promissory note also includes a choice-of-law provision: the "[n]ote is governed by the laws of the State of Utah and applicable federal law." Promissory Note at 5. The choice-of-law provision also says that "[t]he Arbitration Clause is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–9." *Id.* In the arbitration provision, the "[w]hat law applies" section refers to the Federal Arbitration Act by its acronym, saying that "the FAA governs this Arbitration Clause" and that "[t]he Arbitrator must apply substantive law consistent with the FAA." *Id.* at 8. Balance Credit now moves to compel arbitration and stay this action pending the completion of arbitration. Def.'s Mot.

## II. Legal Standard

The Federal Arbitration Act applies when written arbitration agreements involve interstate commerce. 9 U.S.C. § 2. Under the Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The Supreme Court has described this provision as "reflecting both a liberal federal policy favoring arbitration," as well as "the fundamental principle that arbitration is a matter of contract." *AT&T Mobility*

4

*LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up).[3] Under the Federal Arbitration Act, a party seeking to compel arbitration "must show three elements: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 617–18 (7th Cir. 2024). The party opposing arbitration bears the burden of showing that an arbitration agreement is unenforceable. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### III. Analysis

Taylor does not contest that she entered into a written agreement to arbitrate disputes that arise between her and Balance Credit, or that the current dispute is covered by the scope of the arbitration provision. *See generally* R. 25, Pl.'s Resp. Br.; *see also* R. 27, Def.'s Reply Br. at 1. Instead, Taylor contends that the arbitration provision is unenforceable under the doctrine of prospective waiver. Pl.'s Resp. Br. at 7–9. More specifically, Taylor argues that when taken together, Balance Credit's arbitration and general governing law provisions compel the arbitrator to apply Utah law, depriving her of any opportunity to invoke her rights under the Indiana Credit Code. *Id.* For the same reason, she contends that the arbitration provision is unconscionable. *Id.* at 12–13. In response, Balance Credit argues that the arbitration provision does not waive Taylor's state statutory rights, the arbitration provision is not

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).[4]*Viking River* cites *Preston* at page 360, but the quotation appears on page 359. The Court has modified the citation accordingly.

unconscionable, and that the arbitrator should determine the validity of the governing law provision in the promissory note in the first instance. *See* Def.'s Reply Br. at 6–14.

Under the prospective-waiver doctrine, an arbitration provision that forces a party to prospectively waive statutory rights is unenforceable. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). But funneling statutory claims into arbitration is *not* an invalid prospective waiver because plaintiffs retain the right to pursue the statutory claim—they just must do so in arbitration instead of court. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court considered the arbitrability of antitrust claims arising under the Sherman Act. 473 U.S. 614, 616 (1985). The Supreme Court explained that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 628. In a footnote, the Court noted that "in the event the [arbitration provision's] choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy." *Id.* at 637 n.19. In other words, although parties may choose what law governs their contract or what claims they want to arbitrate, parties may not use arbitration and choice-of-law clauses to prospectively limit litigants' vindication of their statutory rights.

The Supreme Court revisited and refined the doctrine in later cases. In *14 Penn Plaza LLC v. Pyett*, the Court explained that federal antidiscrimination rights may not be prospectively waived, but once again held that pursuit of claims in arbitration does not operate as a forbidden prospective waiver. 556 U.S. 247, 265–66 (2009). "[A]n agreement to arbitrate those statutory claims" did not waive the statutory right to be free from workplace discrimination; "it waives only the right to seek relief from a court in the first instance." *Id.* And in *Italian Colors*, the Court described its position in *Mitsubishi Motors* as having only "a willingness to invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's *right to pursue* statutory remedies." 570 U.S. at 235 (emphasis in original) (cleaned up). *Italian Colors* did reaffirm that it would be invalid to purport to *entirely* prospectively waive a statutory claim, leaving no forum at all: "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" would be "certainly cover[ed]" by the doctrine." *Id.* at 236.

Next, the Supreme Court decided *Viking River Cruises, Inc. v. Moriana*, which considered whether the Federal Arbitration Act preempted a rule of California law that invalidated contractual waivers of the right to assert representative claims under a California statute. 596 U.S. 639, 643 (2022). The Supreme Court again reiterated that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits their resolution in an arbitral forum." *Id.* at 653 (cleaned up). At the same time, however, the Court again instructed that a wholesale prospective waiver is invalid and rejected the argument that the

7

prospective-waiver doctrine is limited to arbitration provisions that waive substantive rights in *federal* statutes:

> In briefing before this Court, Viking argued that the principle that the [Federal Arbitration Act] does not mandate enforcement of provisions waiving substantive rights is limited to *federal* statutes. *This argument is erroneous*. The basis of this principle is not anything unique about federal statutes. It is that the [Federal Arbitration Act] requires only the enforcement of "provision[s]" to settle a controversy "by arbitration," [9 U.S.C.] § 2, and not any provision that happens to appear in a contract that features an arbitration clause. That is why we mentioned this principle in *Preston*, which concerned claims arising under *state* law. *See* [*Preston v. Ferrer*, 552 U.S. 346, 359 (2008)[4]] (noting that under the agreement, a party "relinquishe[d] no substantive rights … California law may accord him").

*Id.* at 653 n.5 (emphases added). Courts have since interpreted the footnote to mean that arbitration provisions that waive substantive rights and remedies under state laws are also unenforceable, though there is some disagreement over this position. *Compare Harris v. W6LS, Inc.*, 2024 WL 2319716, at *4–6 (N.D. Ill. May 22, 2024) (discussing *Viking River Cruises* footnote and why the prospective-waiver doctrine applies to state as well as federal substantive rights),[5] *with Johnson v. Opportunity*

---

[4]*Viking River* cites *Preston* at page 360, but the quotation appears on page 359. The Court has modified the citation accordingly.

[5]Balance Credit notes in its brief that "numerous circuit and district courts recognize the [prospective-waiver] doctrine does not apply to the prospective waiver of *state* statutory rights, which [Taylor] is asserting here." R. 20, Def.'s Br. at 10–11 (emphasis in original). The issue of whether the prospective-waiver doctrine applies to substantive rights and remedies under state law is currently pending before the Seventh Circuit. *See Harris v. W6LS, Inc.*, USCA No. 24-2056 (argued Feb. 12, 2025, with supplemental briefing ordered on Dec. 12, 2025). But the Seventh Circuit's decision will not affect the ultimate disposition in this case because the Court concludes that the arbitration provision here does not implicate the prospective-waiver doctrine.

*Fin., LLC*, 2023 WL 2636712, at \*6 (E.D. Va. Mar. 24, 2023) ("[T]he prospective waiver doctrine only applies to the waiver of federal, not state, statutory rights.").

Taylor argues that the promissory note's choice-of-law provision and the arbitration clause operate together to deprive her of rights and remedies under the Indiana Credit Code. Pl.'s Resp. Br. at 7–9. But this is a question, in the first instance, for the arbitrator to decide: it is the arbitrator who first must decide whether Utah law governs Taylor's claims. *See Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995) (holding that the federal court was correct to reserve judgment on the choice-of-law question "as it must be decided in the first instance by the arbitrator"). The choice-of-law provision in the promissory note states that "th[e] [n]ote is governed by the laws of the State of Utah and applicable federal law" and that "[t]he Arbitration Clause is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–9." Promissory Note at 5. The arbitration clause thus identifies the Federal Arbitration Act as the governing law over the arbitration clause itself. *Id.* at 8.

So it is not a foregone conclusion that the arbitrator will apply Utah *substantive* law to Taylor's detriment. The arbitrator presumably first will apply Utah choice-of-law rules on whether to apply Utah's banking laws to the dispute—or instead apply Indiana law. Def.'s Br. at 11–12 (acknowledging that an arbitrator may apply "applicable state substantive law, as well as applicable federal law, such as the National Banking Act").[6] Or the arbitrator may conclude that even though Utah substantive

---

[6]Taylor argues that the combined effect of the arbitration and choice-of-law provisions is to waive her statutory rights under the Indiana Credit Code. Pl.'s Resp. Br. at 9. But Taylor

law would otherwise apply, applying Utah's substantive law would impermissibly deprive Taylor of rights under the Indiana Credit Code—thus requiring the application of Indiana law. Other courts in this District have come to the same conclusion in cases in similar settings. *See Trawick v. NetCredit Loan Servs., LLC*, 2025 WL 2426773, at *3 (N.D. Ill. Aug. 22, 2025) (holding that the application of Kentucky law by the arbitrator was "not the only possible result, and even perhaps not even the most likely one"); *Fratus v. Opportunity Fin., LLC*, 2025 WL 2426684, at *3 (N.D. Ill. Aug. 22, 2025) (holding that application of Utah law was not a foregone conclusion); *Williams v. Opportunity Fin., LLC*, 2025 WL 2300296, at *4 (N.D. Ill. July 17, 2025) (same).

The cases that Taylor cites are distinguishable. To support her position, Taylor mainly relies on *Harris v. W6LS, Inc*. Pl.'s Resp. Br. at 9–10. In *Harris*, the plaintiffs each took out a $600 loan from W6LS with interest rates approaching 500% annually. 2024 WL 2319716, at *1. The promissory notes contained arbitration provisions. *Id.* But crucially, the arbitration clause at issue there required the application of federal law and the law of the Otoe-Missouria Tribe of Indians. *Id.* at *1. Put differently, the arbitrators in those cases were required to apply tribal law, preventing the plaintiff from pursuing state rights that are unavailable under tribal law. *Harris* ultimately concluded that the arbitration provisions at issue were unenforceable under the prospective-waiver doctrine, because enforcement would result in waiver of the plaintiffs' substantive state rights. *Id.* at *9.

---

does not provide analysis of how the arbitrator would be precluded from applying Indiana law based on the language in the governing law provision and the arbitration clause.

The same is true of the other cases that Taylor cites. *See Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 790, 304 (N.D. Ill. 2024) (arbitration clause that required the application of substantive law consistent with the law of the Minto Tribe and federal law was unenforceable under the prospective-waiver doctrine); *Harris v. FFST Mgmt. Servs., LLC*, 686 F. Supp. 3d 734, 741–42 (N.D. Ill. 2023) (arbitration clause "made pursuant to a transaction involving Indian commerce and … governed by the … Federal Arbitration Act" operated as prospective waiver of federal and state law rights even though it did not explicitly reference the application of tribal law); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 332, 337 (4th Cir. 2017) (arbitration clause that required the application of the law of the Otoe-Missouria Tribe of Indians was unenforceable under the prospective-waiver doctrine); *Hengle v. Treppa*, 19 F.4th 324, 332–33, 344 (4th Cir. 2021) (arbitration clause that required the application of laws of the Habematolel Pomo of Upper Lake was unenforceable under the prospective-waiver doctrine). That line of cases all involved arbitration clauses that demanded—without question—the application of tribal law and the corresponding purported loss of state statutory rights. That type of prospective waiver will not necessarily be the outcome of arbitration here.

Indeed, if the arbitration clause here ends up operating as a prospective waiver of Taylor's rights under the Indiana Credit Code, then she will be able to return to federal court to challenge that outcome. But an arbitral forum must consider that issue in the first instance. In *Vimar Seguros*, the Supreme Court allowed a dispute to proceed in a foreign arbitration despite not knowing whether the arbitrator would

11

enforce protections guaranteed by U.S. law. 515 U.S. at 541. The Court allowed this path because a "subsequent opportunity for [judicial] review" of the foreign arbitral award was available "to ensure that the legitimate interest in the enforcement of the laws has been addressed." *Id.* at 540 (cleaned up). The Court explained that "[a]s the District Court has retained jurisdiction, mere speculation that the foreign arbitrators might apply Japanese law which … might reduce respondents' legal obligations, does not in and of itself lessen liability …." *Id.* at 541. This comports with the principle that courts may refuse to enforce arbitral awards that "violate[ ] positive law" or offend "explicit" and "well defined" public policy ascertainable "by reference to the laws and legal precedents." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62–63 (2000). So Taylor would have an opportunity to challenge the validity of the arbitral award under the prospective-waiver doctrine when challenging the arbitral award—if the need arises.

Finally, Taylor argues that the arbitration clause is unconscionable and a violation of Indiana public policy because it disclaims non-waivable rights under state law. Pl.'s Resp. Br. at 12–13. But that argument is identical to the prospective-waiver argument, and so it is rejected for the same reason.

## IV. Conclusion

Balance Credit's motion to compel arbitration, R. 19, is granted. The case is stayed for arbitration. 9 U.S.C. § 3.[7]

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 23, 2026

---

[7]The Federal Arbitration Act requires that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.